R. Scott Greathead (RSG 7824)
Wiggin and Dana LLP
450 Lexington Avenue
New York, New York 10017
(212) 490-1700

*Attorneys for Defendant*
Yale University

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

ALEXANDRA GERENA and              :
CONSTANCE GERENA,              :      ECF CASE
                                :
               Plaintiffs,    :      07 Civ. 3976 (LBS/GWG)
                                :
    - against -              :      **MEMORANDUM OF**
                                :      **LAW IN SUPPORT OF**
GREGORY KORB and            :      **MOTION TO DISMISS**
YALE UNIVERSITY,             :      **OR TRANSFER**
                                :
               Defendants.    :

------------------------------------------------------------------x

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................1

Factual Background ...................................................................................................3

Argument ...................................................................................................................4

I.    The Court Should Dismiss the Complaint Against Yale University Because Both
      Process and Service of Process Are Defective. ................................................................4

      A.    The Complaint Against Yale University Should Be Dismissed Under Rule
            12(b)(4) for Defective Process. ..................................................................5

      B.    The Complaint Against Yale University Should Be Dismissed Under Rules
            12(b)(5) and 4(m) for Defective Service of Process. ..................................6

II.   The Court Should Transfer the Action Pursuant to 28 U.S.C. § 1404 Because: (1) the
      Action Could Have Been Brought in the District of Connecticut; and (2) Transfer to the
      District of Connecticut Is in the Interest of Justice and Is Convenient for the Witnesses
      and Parties. ..............................................................................................................8

      A.    This Action Could Properly Have Been Commenced in the District of
            Connecticut Pursuant to 28 U.S.C. § 1391(a). ...........................................9

      B.    This Action Should Be Transferred to the District of Connecticut for the
            Convenience of the Parties and in the Interests of Justice. ......................10

      C.    The Southern District of New York Has Routinely Transferred Identical Matters
            Pursuant to 28 U.S.C. § 1404. ..................................................................18

Conclusion ...............................................................................................................20

The defendant, Yale University (hereinafter "Yale"), has this day moved pursuant to Rules 12(b)(4), 12(b)(5), and 4(m) of the Federal Rules of Civil Procedure to dismiss the complaint against Yale for defective process and defective service of process or, in the alternative, pursuant to 28 U.S.C. § 1404 to transfer this action to the United States District Court for the District of Connecticut. For the reasons set forth below, the Court should grant this motion and either dismiss or transfer the case.

## Preliminary Statement

Plaintiffs commenced the present lawsuit in the Supreme Court of New York, Bronx County, on April 24, 2007. Before plaintiffs had served the summons and complaint on Yale or any other defendant, Yale removed the action (with all defendants' consent) to the United States District Court for the Southern District of New York. Yale filed its notice of the removal to this Court on May 22, 2007. Jurisdiction exists in this Court because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

Plaintiffs failed to prosecute the action and waited until October of 2007 to attempt service of process. But that was too late, as the 120-day time limit for service of process expired on September 19, 2007. Even when a process server left a summons and complaint in the hands of Yale's Associate General Counsel on October 29, 2007, the summons was entirely defective, having not been issued by the Clerk of this Court and meeting none of the requirements for a federal summons. The summons left by the process server was the original state court summons from the court in the Bronx.

Plaintiffs' counsel attended a status conference in Judge Sand's chambers in July of 2007, where it was reported that no defendant had been served, and Judge Sand directed all counsel to report on the status of service by September 4, 2007. Incredibly, plaintiffs made no attempt to

serve Yale by that date in September and did not even bother to submit the required status report to chambers (unlike defendants, who submitted reports on September 4 and again reported that there had been no service). Plaintiffs then let the September 19 deadline for service go by without explanation. For all Yale knew, plaintiffs had decided to abandon the case. Yet, inexplicably, plaintiffs retained a process server to serve Yale in October and, even then, did not bother to obtain a federal court summons. To date, there has been no return of service filed with the Clerk of this Court.[1]

Plaintiffs cannot pursue this case when they deem fit, without respect for the rules, procedures, and deadlines of this Court. As discussed below, the Court should dismiss the complaint against Yale for defective process and service of process. Yet, there is another reason why this case should not proceed forward in this Court: The events alleged in plaintiffs' complaint have no connection to New York, and instead address matters that took place entirely within Connecticut and can be litigated conveniently only in Connecticut. Even if plaintiffs had prosecuted this matter with timely, proper service of process, venue should be transferred to Connecticut. That is because: (1) all events alleged in the complaint occurred in Connecticut; (2) virtually all witnesses to the events in question (including plaintiff Alexandra Gerena, a Yale student) are Yale students, faculty, and security personnel; (3) all of the pertinent documents are located at Yale; (4) Connecticut law governs the claims in the complaint; and (5) the domicile of plaintiff Alexandra Gerena, along with the residence of her mother, co-plaintiff Constance Gerena, are the only connections that the Southern District of New York have to this case. If the Court does not dismiss the complaint against Yale, it should transfer venue to Connecticut. In

---

[1] Upon information and belief, as of this date, plaintiffs have not served process on the co-defendant, Gregory Korb.

the alternative, the Court should transfer venue to the district where this case most appropriately should be litigated, i.e., the District of Connecticut, and have the Connecticut federal court adjudicate whether Yale should be dismissed from the lawsuit because of defective process or service of process.

This case may not and should not proceed forward in this Court.

## Factual Background

The plaintiffs, Alexandra Gerena ("Alexandra") and her mother, Constance Gerena ("Constance"), allege that Alexandra, while a student at Yale, was physically and sexually assaulted by the co-defendant, Gregory Korb ("Gregory"), in August of 2005. See Complaint ¶¶ 5, 6. Gregory, a resident of New Jersey and also a student at Yale, was subsequently arrested in Connecticut, convicted of two misdemeanor offenses, and placed on probation. See Complaint ¶ 7. As part of his probation, he was banned from Yale's campus. See Complaint ¶ 7.

Plaintiffs claim that Yale is, in part, legally responsible for Gregory's conduct because the assault occurred after Alexandra and Gregory attended "Camp Yale," a social function where it is alleged that Yale provided alcohol to its students and failed to provide security or to enforce policies or rules.[2] See Complaint ¶ 17. Additionally, plaintiffs allege that subsequent to the assault, Yale "colluded" with Gregory by permitting him back on Yale's campus in violation of his probation so that he could attend a party. See Complaint ¶ 28.[3]

_____

[2] If the case is not dismissed, it will be shown at trial that "Camp Yale" is not a University social function; rather, "Camp Yale" is a term used by students—not Yale—to describe the period of time just prior to the commencement of the fall semester. Yale does not supply alcohol to students.

[3] Yale will dispute this allegation if it is required to answer the complaint.

## Argument

I.    **The Court Should Dismiss the Complaint Against Yale University Because Both Process and Service of Process Are Defective.**

The complaint against Yale should be dismissed for insufficiency of process and service of process. See Fed. R. Civ. P. 12(b)(4) and (5). After a case is removed from state to federal court, a plaintiff must follow the federal rules governing process and service of process with respect to any defendant that was not served before removal. *See* 28 U.S.C. § 1448; Norsyn, Inc. v. Desai, 351 F.3d 825, 829 n.4 (8th Cir. 2003); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.31[5] (3d ed. 2006) (hereinafter "MOORE'S").[4] This is consistent with the general principle that "[t]he petitioner having removed his case into the [federal court] has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed." Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 438 (1974) (quotation marks omitted). Here, Yale was not served with process before this action was removed, *see* Declaration of Susan Sawyer ¶ 4 (hereinafter "Sawyer Decl."), and, as will be seen, plaintiffs have failed to follow the applicable federal rules in attempting to serve process on Yale.

---

[4] In pertinent part, 28 U.S.C. § 1448 provides: "In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." *See also* MOORE'S § 107.31[5] ("After removal, federal rules govern service of process regarding any defendants who were not served in the state court action. For example, any defendants not served with process at the time of removal must be served with process in accordance with the federal rules applicable to cases originally filed in federal court; therefore, a federal summons must be obtained after removal.").

**A.    The Complaint Against Yale University Should Be Dismissed Under Rule 12(b)(4) for Defective Process.**

Although "a <u>federal</u> summons must be obtained after removal," MOORE'S § 107.31[5] (emphasis added), here, plaintiff attempted to serve a <u>state</u> summons. <u>See</u> Sawyer Decl. ¶ 6 & Exhibit 1 thereto. Thus, the summons is defective on its face.[5] Contrary to the requirements of Rule 4(a), the summons is not signed by the Clerk of Court, does not bear the seal of this Court, does not identify the correct court,[6] is not directed specifically to the defendant Yale,[7] and incorrectly states that defendants served outside of New York have 30 days (rather than 20 days) to respond to the complaint. For these reasons alone, this action against Yale should be dismissed pursuant to Rule 12(b)(4). <u>See, e.g.</u>, <u>Dean Mktg., Inc. v. AOC Int'l (U.S.A.) Ltd.</u>, 610 F. Supp. 149, 152 (E.D. Mich. 1985) (dismissing action against defendant in part based on holding that "plaintiff's attempted perfection of service of process after removal was ineffective where plaintiff mailed a <u>state</u> court summons rather than a summons issued by <u>federal</u> court to defendant") (emphases in original).

---

[5] "The limited power of the federal government has been invoked in this action and the case is now in the hands of the federal court. The unserved state court process has become null and void." <u>Randolph v. Hendry</u>, 50 F. Supp. 2d 572, 580 (S.D. W. Va. 1999).

[6] "The issuance of a summons signed by the Clerk, with the seal of the Court, and the time designated within which defendant is required to appear and attend, are essential elements of the court's personal jurisdiction over the defendant." <u>Ayres v. Jacobs & Crumplar, P.A.</u>, 99 F.3d 565, 568 (3d Cir. 1996) (affirming dismissal of action where the *pro se* plaintiff—an attorney— did not obtain a summons signed by the clerk of court or with the seal of the court, but signed the summons herself before having it served). <u>See also id.</u> at 569 ("The parties cannot waive a void summons.").

[7] The state court summons was directed collectively to "the above named defendants." <u>See</u> Exhibit 1 to Sawyer Decl.

**B.    The Complaint Against Yale University Should Be Dismissed Under Rules 12(b)(5) and 4(m) for Defective Service of Process.**

Plaintiffs' attempt to serve process was untimely and therefore void.  Rule 4(c)(1) plainly states: "The plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m) . . . ."  Rule 4(m), in turn, requires a plaintiff to effectuate service within 120 days of when the complaint is filed in the district court.  See Fed. R. Civ. P. 4(m).[8]  For a case, like this one, removed from state to federal court, "the 120-day period for serving process runs from the date of removal, not from the filing of the original complaint in state court."  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun, No. 93 Civ. 7170 (LAP), 1994 WL 463009, at *2 (S.D.N.Y. Aug. 25, 1994).[9]  This action was removed to federal court on May 22, 2007, and, therefore, plaintiffs were required to serve Yale by no later than September 19, 2007.  Plaintiffs nevertheless made no effort to serve process on Yale at any time on or before September 19.  It was not until October 29, 2007 that a process server left a summons and the complaint in the hands of Yale's Associate General Counsel.  See Sawyer Decl. ¶ 5.

Plaintiffs' dilatory attempt to serve Yale is a result of simple attorney neglect and, therefore, is inexcusable.  Tso v. Delaney, 969 F.2d 373, 375-76 (7th Cir. 1992) (affirming dismissal for failure to serve within 120 days and stating that "[o]ne thing . . . is clear from the

---

[8] In pertinent part, Rule 4(m) provides: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."

[9] "When no defendant has been served, in an action removed to federal court from state court, Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the summons and complaint upon the defendant within 120 days from filing of the Notice of Removal in the federal court."  Randolph v. Hendry, 50 F. Supp. 2d 572, 579 (S.D. W. Va. 1999).

cases[:] attorney neglect, without more, cannot serve as the basis for a finding of good cause" under Rule 4). The lack of service was expressly raised and discussed with plaintiffs' counsel at the status conference held before this Court on July 16, 2007. See Declaration of R. Scott Greathead ¶ 6 (hereinafter "Greathead Decl."). As a result, the Court directed the parties to submit status letters to chambers on September 4, 2007—over seven weeks after the status conference when the lack of service was noted, and over two weeks before the deadline for service. The parties were required in their status letters to update the Court on plaintiffs' efforts to serve each defendant. See id.[10] Each defendant—i.e., Yale and Gregory Korb—submitted to Judge Sand's chambers (and served on plaintiffs' counsel) the required status letter on September 4, advising that service had still not been effectuated on either defendant. See id. ¶ 7 & Exhibits 1-2 thereto. Yet, plaintiffs did not bother to submit the required status letter to the Court, let alone request an extension of time to effectuate service. Plaintiffs' counsel communicated nothing to defense counsel, see id., so that Yale could not know whether plaintiffs ever intended to pursue this lawsuit. When September 19, 2007 came and went, with no service of process on Yale and with no explanation for that omission, the case appeared to be abandoned.

Without warning or explanation, however, plaintiffs decided in October of 2007 to pursue the matter against Yale after all. A process server left a summons and the complaint in the hands of Yale's Associate General Counsel on October 29, 2007. See Sawyer Decl. ¶ 5. By then (or, indeed, by any date after September 19, 2007), it was too late to serve process. Plaintiffs' untimely service is inexcusable, and the Court should dismiss the complaint against Yale under Rules 4(m) and 12(b)(5). See Zapata v. City of New York, 502 F.3d 192, 197-99 (2d Cir. 2007)

---

[10] In the event there had been service, the status letters also had to state what motions were planned and a proposed schedule for the motions. See id.

(affirming district court's exercise of discretion to dismiss under Rule 4(m) without granting additional time for service, where plaintiff proffered neither good cause nor even a colorable excuse for his counsel's neglect in serving defendant four days after expiration of 120-day period); Momah v. Albert Einstein Med. Ctr., 158 F.R.D. 66 (E.D. Pa. 1994) (dismissing complaint under Rule 12(b)(5) where service occurred one day after expiration of Rule 4(m)'s 120-day deadline, and where delay in service was caused only by plaintiff's counsel's lack of diligence and professional neglect).

II.    **The Court Should Transfer the Action Pursuant to 28 U.S.C. § 1404 Because: (1) the Action Could Have Been Brought in the District of Connecticut; and (2) Transfer to the District of Connecticut Is in the Interest of Justice and Is Convenient for the Witnesses and Parties.**

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts apply a two-pronged test when deciding whether transfer pursuant to 28 U.S.C. § 1404 is proper. First, the court must determine whether the action could have been brought in the proposed transferee forum. Second, the court must determine whether the transfer is in the interest of justice and would be convenient for the witnesses and parties. Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

A motion to transfer under § 1404 (a) requires the district court to "weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The factors to be considered by the court in determining whether a motion to transfer a case pursuant to § 1404(a) should be granted include the location of events giving rise to the suit, convenience of the witnesses, relative ease of access to sources of proof, availability of process to compel the attendance of unwilling witnesses, the "local interest" in the dispute, and the familiarity of the contemplated forum with the law to be applied. See Frasca v. Yaw, 787 F. Supp. 327, 331

8

(E.D.N.Y.1992); <u>Gibbs & Hill, Inc. v. Harbert Int'l, Inc.</u>, 745 F. Supp. 993, 996 (S.D.N.Y. 1990); <u>Kanbar v. U.S. Healthcare, Inc.</u>, 715 F. Supp. 602, 606 (S.D.N.Y. 1989); <u>Elite Parfums, Ltd. v. Rivera</u>, 872 F. Supp. 1269, 1271 (S.D.N.Y. 1995).

The decision whether to transfer venue pursuant to 28 U.S.C. § 1404(a) lies within the sound discretion of a district court. <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964); <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1026 (2d Cir. 1993). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." <u>Daniel v. Am. Bd. of Emergency Med.</u>, 428 F.3d 408, 435-36 (2d Cir. 2005). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110, 117 (2d Cir. 1992) (citing <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 27 (1988)); <u>A. Olinick & Sons v. Dempster Bros., Inc.</u>, 365 F.2d 439, 444 (2d Cir. 1966). Here, there is overwhelming reason to transfer the case to the District of Connecticut if the Court does not otherwise dismiss the action against Yale.

### A.    This Action Could Properly Have Been Commenced in the District of Connecticut Pursuant to 28 U.S.C. § 1391(a).

A case may be transferred only to a district where the case "might have been brought." 28 U.S.C. § 1404(a). Therefore, the Court must determine whether this action could have been brought in the District of Connecticut. <u>Mattel, Inc. v. Robarb's, Inc.</u>, 139 F. Supp. 2d 487, 490 (S.D.N.Y. 2001). When jurisdiction is based on diversity, as in the present case, venue may be based on one of three grounds, only one of which is relevant here:[11]   venue is proper "in any

---

[11] Section 1391 of the Judiciary Code identifies the proper venue for any action founded on diversity of citizenship:

*(footnote continues on next page)*

district in which a substantial part of the events or omissions giving rise to the claim occurred."
28 U.S.C. § 1391(a)(2); see also Bates v. C & S Adjusters, Inc., 980 F.2d 865, 866-67 (2d Cir.
1992); Greenblatt v. Gluck, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003).

It is undisputed that all events alleged in the complaint occurred in New Haven,
Connecticut.  See Greathead Decl. ¶ 8.  Therefore, not only is the District of Connecticut a
proper venue in this case pursuant to 28 U.S.C. § 1391(a), it is in fact the only appropriate venue
had this action originally been commenced in federal court.[12]  Thus, transfer is not only
permissible here, but the reasons for transferring, as described in the following section, are
compelling.

**B.    This Action Should Be Transferred to the District of Connecticut for the
Convenience of the Parties and in the Interests of Justice.**

Having determined that an alternative venue exists, the Court must determine whether it
is appropriate to transfer the case to Connecticut based upon the "convenience of parties and
witnesses" and in the "interest of justice".  See 28 U.S.C. § 1404(a).  The objectives of Section
1404(a) are "to prevent the waste of time, energy and money and to protect litigants, witnesses
and the public against unnecessary inconvenience and expense."  Van Dusen, 376 U.S. at 616.

--------

A civil action wherein jurisdiction is found only on diversity of citizenship may,
except as otherwise provided by law, be brought only in (1) a judicial district
where any defendant resides, if all defendants reside in the same state; (2) a
judicial district in which a substantial part of the events or omissions giving rise to
the claim occurred, or a substantial part of the property that is the subject of the
action is situated; or (3) the judicial district in which any defendant is subject to
personal jurisdiction at the time the action is commenced, if there is no district in
which the action may otherwise be brought.

28 U.S.C. § 1391(a) (emphasis added).

[12] Yale does not reside in the State of New York (see Complaint ¶ 4), making 28 U.S.C.
§ 1391(a)(1) inapplicable.  Also, because the action could have been brought in the District of
Connecticut, 28 U.S.C. § 1391(a)(3) is inapplicable.

In making this decision, the following factors control: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.  See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006); Ayala-Branch v. Tad Telecom, Inc., 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002); Berman v. Informix Corporation, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1992).  An analysis of each of these factors leads to the conclusion that this action, if not dismissed outright, should be transferred to the District of Connecticut.

        *1.*      *The Matter Should Be Transferred to the District of Connecticut for the Convenience of the Witnesses.*

"Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district."  Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991); see also Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991) ("The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted."); Arrow Electronics, Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989); ("In most cases, the convenience of the party and non-party witnesses is the most important factor in the decision whether to grant a motion to transfer.").

In the instant action, most, if not virtually all, witnesses will be Yale students, faculty, administrators and police officers as all of the events alleged in the complaint occurred at Yale.[13]

Yale University Police Sergeants Jones and Brano were directly involved in the initial investigation by preparing the incident report and taking Alexandra's statement. Yale University Police Lieutenant Holohan, along with Brano, interviewed Gregory Korb subsequent to the incident. Yale University Police Detective Mullen and Officer Dercole were directly responsible for inspecting Gregory's dormitory room shortly after the alleged assault and will testify as to the evidence they uncovered. Each of these individuals will be a material witness at trial.

There are also several Yale administrators who will offer pertinent testimony. Stephen Lassonde (the Dean of Calhoun College) and Jonathan Holloway (the Master of Calhoun College) first had contact with Alexandra after the alleged assault and will testify about Alexandra's initial report of the incident, as well as her demeanor and condition at that time. Dean Lassonde and Master Holloway, along with freshman counselor, Molissa Farber, who met with Alexandra and her parents at the Yale University Health Plan after the alleged assault, will refute plaintiffs' claims that Yale failed to provide support to Alexandra and her mother subsequent to the incident. Betty Trachtenberg (Dean of Student Affairs) will testify as to Yale's policy on providing alcohol at Yale events; Jill Cutler (Secretary of Executive Committee) will testify about other claims brought against Yale; Jasmina Besirevic (Dean of Trumbull College), Alexandra's present dean, is expected to testify regarding Alexandra's claims that she is no

---

[13] In cases where the events demonstrate that the majority of witnesses are located in the transferee district, it is unnecessary to submit a statement naming the witnesses who will specifically be inconvenienced by maintaining the present venue. See MBCP Peerlogic LLC v. Critical Path, Inc., No. 02 Civ. 3310, 2002 U.S. Dist. LEXIS 23268, at *10 (S.D.N.Y. Dec. 2002). Nevertheless, this memorandum does list several witnesses by name to corroborate the convenience of trying this matter in Connecticut. See Greathead Decl. ¶¶ 9-14.

longer able to socialize with peers, enjoy interactions with male acquaintances, and enjoy the quality of life, work, study and play.

Finally, there are several Yale University students who will testify, including Andriana Diez, a close friend of Gregory Korb who spent the evening of the alleged assault with Gregory, and Tom Abell, Gregory's suite mate.

The aforementioned witnesses are only those witnesses Yale is <u>currently</u> aware of. Plaintiffs allege that Yale is responsible for the assault because it knew that Gregory had a history of "assaultive and violent behavior" as he previously assaulted another Yale student. <u>See</u> Complaint ¶ 21. Plaintiffs also allege that Yale knew of numerous prior incidents of sexual and other assaults by Yale male students against female students yet instituted no programs or protocol to prevent such incidents and took no meaningful punishment against these other students who committed similar offenses. <u>See</u> Complaint ¶ 21. In the absence of discovery, Yale cannot know to what incidents the plaintiffs refer in their complaint. However, assuming any such incidents did occur, all witnesses to those incidents would be Yale students, faculty, staff and police officers. Thus, there may be a large number of unidentified Connecticut-based witnesses who will be required to testify at trial.

It would certainly be more convenient for the numerous witnesses involved, who are Yale students, faculty and police officers, to appear for trial in Connecticut than in New York,[14] assuming they can even be forced to appear in New York. Indeed, Yale would be severely

---

[14] The incident between Alexandra and Gregory took place in August 2005 just before the start of their sophomore years. Now, two years later, Alexandra is still enrolled at Yale (<u>see</u> Sawyer Decl. ¶ 7), and it is likely many of Alexandra's and Gregory's classmates remain at Yale. Even if some have departed, there is no showing of any connection between these witnesses and New York, and the circumstances of these events are themselves sufficient to show that the convenience of witnesses is overwhelmingly centered in Connecticut.

disadvantaged by not having the case transferred, since there is no assurance that all or even most of these witnesses are subject to being subpoenaed to a trial in New York. It should be further noted that requiring Yale deans and faculty members in the employ of Yale University to travel to the Southern District of New York for trial during the school year could "overly disrupt their professional lives as well as innumerable others, such as students and administrative staff." Watkins v. Harvard Univ., No. 89 Civ. 2602, 1989 U.S. Dist. LEXIS 19122, at *8 (E.D.N.Y. 1989) (granting defendant Harvard University's motion to transfer to the District of Massachusetts because the witnesses would be students and staff at Harvard whose classes would be disrupted); see also Douglas v. Syracuse University College of Law, No. 94 Civ. 9195, 1995 WL 555693 (S.D.N.Y. 1995) (granting defendant Syracuse Law School's motion to transfer to the Northern District of New York from the Southern District, in part because defendant was prepared to call former student's first-year professors as witnesses, which would disrupt several first-year classes).

Since the convenience of the witnesses is the most important factor in determining whether transfer is appropriate, and most, if not virtually all, witnesses will be Yale students, faculty and police officers, this factor weighs heavily in support of granting the motion to transfer.

## 2.    All Pertinent Documents Are Located in Connecticut.

The complaint reveals that Yale's policies and protocols, as well as any files, incident reports, or disciplinary proceedings prepared in connection with any of the alleged assaults occurring on Yale's campus, will be essential to this litigation. The Yale University Police Department file, which includes the incident report, witness statements, and at least 64 photographs of the dormitory room will be material evidence. See Greathead Decl. ¶ 15. Since the documents are at Yale's facilities, which are all in Connecticut, see id., transfer is

appropriate. See Boreal Laser, Inc. v. Coherent, Inc., 91 Civ. 5863, 1992 U.S. Dist. LEXIS 276, at *5 (S.D.N.Y. Jan. 13, 1992); see also Coloplast A/S v. Amoena Corp., 92 Civ. 3432, 1992 U.S. Dist. LEXIS 17587, at *6 (S.D.N.Y. Nov. 18, 1992) (holding that defendant's business records pertaining to the design, manufacture, and sale of its products in its home district weigh in favor of transfer); Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) (citing McEvily v. Sunbeam-Oster Co., 878 F. Supp. 337, 348 (D.R.I. 1994)) (ease of access to large quantity of documents favors transfer).

3.    *This Matter Should Be Transferred for the Convenience of the Parties.*

Convenience of the parties is typically a neutral fact in the present analysis since it only shifts inconvenience from one party to another. See Wechsler v. Macke Int'l Trade, Inc., No. 99 Civ. 5725(AGS), 1999 WL 1261251, at *6 (S.D.N.Y. 1999) (parties' convenience a neutral factor if merely shifts inconvenience); see also Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc., No. 00 Civ. 1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. 2000). However, transfer of the present action to Connecticut in this case will, in fact, be convenient for Alexandra, who remains a student at Yale. See Sawyer Decl. ¶ 7.[15] Only her mother, co-plaintiff Constance Gerena, resides in New York, and her claims of emotional distress are derivative, based on the events that occurred to Alexandra in New Haven (see Complaint ¶¶ 38-

---

[15] The complaint (at ¶ 1) states that Alexandra is domiciled in New York, and she retains that domicile while a student in Connecticut. See Seitelman v. Lavine, 325 N.E.2d 523, 526 (N.Y. 1975) ("[I]t is well-established that students do not gain or lose a residence simply because they are away from home."); see also In re Garvey, 41 N.E. 439, 441 (N.Y. 1895) ("[T]he sojourn of the student is assumed to be temporary, and the law preserves to him his former residence, notwithstanding his absence therefrom."); Application of Davy, 120 N.Y.S.2d 450, 450 (App. Div. 1952) ("[T]here has evolved a rule that students . . . neither gain nor lose a residence simply because they are away from home."). Her domicile, however, does not detract from the fact that she is a student in New Haven, Connecticut, making it convenient for her to attend court in Connecticut.

44). Indeed, the <u>only</u> individual the transfer will truly be inconvenient for is plaintiffs' attorney. The convenience of an attorney, however, should not be a factor in determining whether to grant or deny a transfer motion. See <u>Ayers v. Arabian American Oil Co.</u>, 571 F. Supp. 707, 709 n.1 (S.D.N.Y. 1983); <u>Kolko v. Holiday Inns, Inc.</u>, 672 F. Supp. 713, 715 (S.D.N.Y. 1987).

> 4.    *Connecticut Is the Locus of the Operative Event.*

The locus of operative facts is a "primary factor" in a motion to transfer venue, <u>ZPC 2000, Inc. v. SCA Group, Inc.</u>, 96 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) (citing <u>Smart v. Guard</u>, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998)). It is undisputed that <u>all</u> of the alleged events occurred in New Haven, Connecticut. Accordingly, this factor weighs heavily in favor of transfer.

> 5.    *The Matter Should Be Transferred to Connecticut so the Parties Can Compel Witnesses to Testify at Trial.*

Since most, if not virtually all, of the witnesses called at trial will be Yale students, faculty, and police officers who are located in Connecticut, the ability to compel those witnesses to testify at trial in Connecticut favors transfer.

> 6.    *The Means of The Parties Do Not Suggest This Matter Should Not Be Transferred.*

"The relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change." <u>Kolko v. Holiday Inns, Inc.</u>, 672 F. Supp. 713, 716 (S.D.N.Y. 1987) (granting defendant's motion to transfer despite financial burden imposed on student plaintiff); <u>Coker v. Bank of America</u>, 984 F. Supp. 757, 767 (S.D.N.Y. 1997) ("To the extent [plaintiffs'] claim of unfairness is based on … the additional expense of [plaintiffs'] flying from Nigeria to New Mexico (or the expense of flying from Nigeria to New York) [that] factor [is] entitled to little weight."). Even if the means of the parties were an important factor, Alexandra will already be in Connecticut as she is currently a Yale student. Therefore, this factor does not militate against transfer.

7.    *Connecticut Law Is Controlling in This Matter.*

Since the laws of the State of Connecticut will be controlling in this tort action, as all events occurred in Connecticut, and no federal causes of action have been alleged, this factor favors transfer.

8.    *Plaintiffs' Choice of Forum Should Be Afforded Little Consideration Since Plaintiffs' Residence Is the Only Connection with New York.*

While significant deference is normally accorded to the plaintiff's choice of forum, the "plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum." UFH Endowment, Ltd. v. Nevada Manhattan Mining, Inc., No. 98 Civ. 5032, 2000 WL 1457320, at *5 (S.D.N.Y. 2000) (quoting 1-800 Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994)).  In the instant action, all of the events alleged in plaintiffs' complaint occurred in Connecticut.  The sole connection that this claim has to the Southern District of New York is that it is Alexandra's domicile and Constance's residence.  "[O]ne party's residence in a chosen forum, without more connecting a case to that forum, is insufficient to keep a case in that forum." Watkins v. Harvard Univ., No. 89 Civ. 2602, 1989 U.S. Dist. LEXIS 19122, at *10 (E.D.N.Y. 1989).  Since plaintiffs' residence is the only connection this matter has to the Southern District, this factor favors transfer.

9.    *Considering the Totality of the Circumstances, This Lawsuit Should Be Transferred to Connecticut.*

The final factor to be analyzed is trial efficiency and the interest of justice based on a totality of the circumstances.  Considering the totality of the circumstances, and in particular the location of the witnesses and the locus of operative facts, and considering that Constance will not be unduly burdened by traveling from the Bronx to Connecticut, this motion to transfer should be granted in the interest of justice. See Cower v. Albany Law School of Union University, 2005 WL 1606057 (S.D.N.Y. 2005).

**C.    The Southern District of New York Has Routinely Transferred Identical Matters Pursuant to 28 U.S.C. § 1404.**

The New York district courts—including the Southern District—have routinely transferred identical matters.  The case of Cower v. Albany Law School of Union University, 2005 WL 1606057 (S.D.N.Y. 2005), is instructive.  In Cower, the plaintiff, a resident of New York City, commenced an action in the Supreme Court of New York alleging that after he enrolled in Albany Law School as a first-year law student, employees of the school commenced a pattern and practice of harassing and discriminating against him based on his sex and sexual orientation.  The plaintiff alleged that the President and Dean of the Albany Law School were indifferent to his complaints and failed to respond to his concerns.  The plaintiff finally withdrew from the law school after his first semester, "because he could no longer tolerate the hostile environment."  Id. at *1.

The Cower action, like the present action, was first removed to the Southern District of New York.  The court then transferred the matter to the Northern District of New York since: (1) the events all occurred in Albany; (2) most, if not all, of the witnesses would be from Albany; and (3) the plaintiff would not be unduly burdened by traveling from New York City to Albany: "Considering the totality of the circumstances, and in particular the location of the witnesses and the locus of the operative facts, and considering the plaintiff will not be unduly burdened by traveling from New York City to Albany, in the interest of justice, the motion to transfer is granted."  Id. at *4.  Judge Batts observed that while deference is normally accorded to the plaintiff's choice of forum, "the plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum."  Id. (quoting UFH Endowment, Ltd., supra, 2000 WL 1457320, at *5).  Similarly, in the present case, all of the events alleged in plaintiffs' complaint occurred in New Haven, Connecticut; virtually all of the known witnesses

will be from Connecticut; and plaintiffs' residence is the only connection this action has with the Southern District of New York.

In <u>Cerussi v. Union College</u>, 144 F. Supp. 2d 265 (S.D.N.Y. 2001), the plaintiff, formerly a senior at Union College, was expelled after an investigative report written by a defendant led to disciplinary hearings overseen by another defendant at which the plaintiff was found guilty of raping another defendant. The plaintiff sued the college claiming it discriminated against him and predetermined his guilt, and sued the defendant who claimed she was raped by the plaintiff. The plaintiff originally filed the complaint in New York Supreme Court for the County of Westchester. The defendants, like Yale in the present case, removed the action to the Southern District of New York. The court then granted the defendants' motion to transfer venue from the Southern District of New York to the Northern District of New York, pursuant to 28 U.S.C. § 1404. When the plaintiff objected to transfer on the ground that he resided in Westchester County, Judge Conner responded: "One party's residence in the chosen forum without more connecting a case to that forum is insufficient to keep a case in that forum." <u>Id.</u> at 268 (citing <u>Watkins v. Harvard Univ.</u>, No. 89 CV 2602 1999 WL 135181, at *4 (S.D.N.Y Nov. 3, 1989)). The court found that since the parties' obligations would more likely arise during the school year, the Northern District was more convenient. Further, the court held that since the material witnesses in the action are "those who actually took part in the disciplinary process and all reside or work in the Northern District," transfer was appropriate. <u>Cerussi</u>, 144 F. Supp. at 269 (citing <u>Promuto v. Waste Management, Inc.</u>, 44 F. Supp. 2d 628, 639 (S.D.N.Y. 1999)); <u>Douglas v. Syracuse Univ. College of Law</u>, <u>supra</u>, 1995 WL 555693, at *2 ("[Plaintiff] has failed to address the fact that the faculty, i.e., those individuals whom [plaintiff] alleges discriminated against her and whose testimony appears most relevant to this case, all reside in [the Northern District] and

its surrounding areas."). Similarly, the alleged conduct in the present case occurred in New Haven, Connecticut and virtually all known witnesses will be Yale students, faculty members, administrators and police officers.

In Handler v. Regents of the University of Michigan, No. 00 Civ. 6314, 2000 WL 1635701 (S.D.N.Y. 2000), the plaintiffs' discrimination claim against the University of Michigan was transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404, because a substantial part of the events giving rise to the claim occurred there.

In Watkins v. Harvard University, No. 89 CV 2602 1989 WL 135181 (E.D.N.Y. 1989), the plaintiff alleged that Harvard wrongfully accused him of rape, and he commenced a federal action in New York seeking to enjoin Harvard's administrative proceedings regarding the rape until the outcome of the criminal proceedings. The court held that New York had no material connection to the events at issue and that since all witnesses were either Harvard students or Harvard employees, including medical and police witnesses related to the criminal action, the matter should be transferred to the District of Massachusetts. On the basis of this authority, the present action should be transferred to the District of Connecticut if it is not first dismissed.

## Conclusion

Plaintiffs attempted to serve process on Yale with a defective summons, and they did so beyond the deadline established by federal law. They cannot now prosecute the action against Yale, and the complaint against Yale should be dismissed.

Moreover, if the matter is not dismissed, venue should be transferred pursuant to 28 U.S.C. § 1404 since all events alleged in the complaint occurred in Connecticut and virtually all known witnesses will be Yale students, faculty, administrators, and police officers. Further, the numerous documents which have been identified to date are all located on Yale's campus.

Transfer will not prejudice Alexandra since she is a Yale student who lives in New Haven. Since Alexandra's New York domicile, and her mother's New York residence, are the only connection this matter has with the Southern District of New York, the choice of forum should be given no weight.

Accordingly, it is respectfully submitted that the motion to dismiss or transfer should be granted. The complaint against Yale should be dismissed. If it is not, the Court should transfer this matter to the District of Connecticut. In the alternative, the Court can transfer the action to the District of Connecticut—where this action belongs—and have that federal court adjudicate in the first instance whether Yale should be dismissed from the lawsuit because of defective process or service of process.

Dated: New York, New York
      November 19, 2007

**WIGGIN AND DANA LLP**

By:   /s/ R. Scott Greathead
    R. Scott Greathead (RSG 7824)
    450 Lexington Avenue, Suite 3800
    New York, NY 10017
    Tel.:. (212) 490-1700
    Fax: (212)490-0536
    Email: sgreathead@wiggin.com

*Of Counsel:*
Brock Dubin (BD 0315)
**Donahue, Durham & Noonan, P.C.**
741 Boston Post Road
Guilford, CT 06437
Tel.: (203) 458-9168
Fax: (203) 458-4424
E-mail: bdubin@ddnctlaw.com

*Attorneys for Defendant Yale University*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 19, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system. In addition, pursuant to Federal Rule of Civil Procedure 5 and Local Civil Rule 5.3, I certify that, on November 19, 2007, a copy of the foregoing has been mailed, by overnight delivery service, to the following:

David Rabin, Esq.
Rabin Law Office
3889 Crompond Road
Cortlandt Manor, NY 10567

   /s/ R. Scott Greathead
R. Scott Greathead (RSG 7824)

\490\197\53443.2