R. Scott Greathead (RSG 7824)
Wiggin and Dana LLP
450 Lexington Avenue
New York, New York 10017
(212) 490-1700

*Attorneys for Defendant*
Yale University

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ALEXANDRA GERENA and CONSTANCE GERENA,

                            Plaintiffs,

against

GREGORY KORB and YALE UNIVERSITY,

                            Defendants.

ECF Case

No. 07-Civ. 3976
(LBS/GWG)

**REPLY DECLARATION
OF
R. SCOTT GREATHEAD
IN FURTHER SUPPORT
OF MOTION TO DISMISS
OR TRANSFER**

------------------------------------------------------------X

      **R. Scott Greathead,** under penalty of perjury, declares as follows:

      1.    I am a member of the Bar of this Court, and of Wiggin and Dana LLP, attorneys for defendant Yale University ("Yale") in the above-captioned action. I make this reply affidavit in further support of Yale's motion to dismiss the complaint herein or in the alternative to transfer the action to the United States District Court for the District of Connecticut. This reply affidavit addresses the matters raised by plaintiffs in the Declaration of David Rabin in Opposition to Defendants' Motion to Dismiss or Transfer.[1] Unless otherwise indicated, the

---

[1] Yale files its reply papers on the assumption that plaintiffs have filed their opposition papers with the Clerk of Court. The Declaration of David Rabin ("Rabin Declaration") does not appear on the docket sheet and was not electronically filed. Indeed, the docket sheet on PACER does not even reflect a federal court appearance by plaintiffs' counsel since the removal of the action.

statements herein are based on my own personal knowledge, or an examination of records in the possession of Yale, or a review of the accompanying reply affidavits of Jeffrey R. Babbin and Susan Sawyer, cited herein.

**The Complaint Was Served with Defective Process**

2.  In Yale's motion to dismiss, one of the grounds for dismissal is that plaintiffs attempted to serve Yale with a defective summons. Plaintiffs' process server left a state court summons, and not a federal court summons, in the hands of Yale's Associate General Counsel. As Yale's opening papers explained, the state court summons does not satisfy the requirements of federal law for summoning a defendant to court where process had not been served before the removal of the case to federal court. Plaintiffs' opposition papers do not address this prong of the dismissal motion. Plaintiffs have no argument to make to save the action against Yale from dismissal. The Court should dismiss under Federal Rule of Civil Procedure 12(b)(4).

**The Complaint Was Not Timely Served, Making Service Defective**

3.  Another of Yale's grounds for dismissal is that plaintiffs' attempt to serve process on Yale was untimely under Federal Rule of Civil Procedure 4(c)(1) and 4(m), and therefore void. As Yale's opening papers explained, Yale removed the action to this Court on May 22, 2007, giving plaintiffs 120 days until September 19, 2007 to serve Yale with process. Plaintiffs, though, made no attempt to serve Yale until *after* September 19, 2007.

4.  Nothing in the opposition papers avoids the conclusion that plaintiffs' dilatory attempt to serve Yale was anything other than simple attorney neglect. Nothing in those papers provides this Court with any reason to excuse the late service on Yale. In his Declaration, plaintiffs' counsel refers to the alleged difficulties in serving the co-defendant Gregory Korb, but he plainly knew where to serve Yale during the entire time this action has been pending. *See*

Reply Declaration of Jeffrey R. Babbin (showing that Yale's Connecticut counsel informed plaintiffs' counsel on June 1, 2007 that service of process can be made on Yale's Office of General Counsel, 2 Whitney Avenue, New Haven, CT). In fact, plaintiffs' counsel understood the need to serve Yale when he attended the status conference with Judge Sand on July 16, 2007 and when Judge Sand ordered the parties to submit status letters to chambers by September 4, 2007. Attached to the Rabin Declaration, as Ex. 4, is the status letter that plaintiffs' counsel purportedly sent to Judge Sand on August 30, 2007 (but was never received by the undersigned counsel for Yale). In that letter, plaintiffs' counsel represented to Judge Sand that he would no longer wait to serve Yale until Gregory Korb could be found and that "service upon Yale should be accomplished by the time you [Judge Sand] receive this letter." Yet, plaintiffs did not even attempt to serve Yale at that time or indeed anytime on or before the September 19, 2007 deadline for service. *See* Reply Declaration of Susan Sawyer ¶ 2. Plaintiffs do not explain why they did not attempt service on Yale when their lawyer sent the alleged status letter to chambers on August 30, 2007 or at any time before September 19, 2007.

     5.     In the Rabin Declaration, plaintiffs evade the question of just when they first tried to serve Yale with process. Plaintiffs state that Yale's legal department "refused the initial service." Rabin Decl. ¶ 6. But what that Declaration avoids addressing is the date of that initial service attempt, which was in October 2007. Exhibit 2 to the Rabin Declaration is a September 27 letter from plaintiffs' counsel to a Connecticut process server directing that service be made on Yale. The letter has the year "2006" but that must have been a typographical error and would have been 2007. In other words, although the complaint was filed in state court in April 2007, and removed to federal court in May 2007, plaintiffs' first documented step toward serving Yale was in late September 2007—*after* the September 19, 2007 deadline. Moreover, as the accompanying Reply Declaration of Susan Sawyer attests (¶ 3), the process server came to

3

Yale's Office of General Counsel initially on October 3, 2007, but was sent away because the summons was from the Bronx, N.Y. Supreme Court and no action was pending in that court. The process server returned on October 29, 2007 when Yale took the summons and complaint (*see* Sawyer Reply Decl. ¶ 3) as it was clear that plaintiffs were persisting in serving Yale with defective process. Yale then filed the instant motion to dismiss or transfer.

6.      The facts are plain. It was not until **October** of 2007 that plaintiffs first attempted service on Yale. Plaintiffs could have served Yale at any time after filing the complaint in April 2007, and could have served Yale at any time after Yale removed the action to federal court in May 2007. Plaintiffs could have served Yale after the lack of service was discussed at the July 2007 status conference, and they could have served Yale when plaintiffs' counsel informed Judge Sand in the alleged August 30, 2007 status letter that Yale would be served by the time that Judge Sand received the letter. Plaintiffs had several months to serve Yale. On any of the above-referenced dates, service (or even attempted service) would have been before the September 19, 2007 deadline set by Rule 4(m). But plaintiffs did not mail the (defective) process and complaint to a process server until September 27, 2007 (*see* Ex. 2 to Rabin Decl.), and the process server first traveled to Yale on October 3, 2007 (*see* Sawyer Reply Decl. ¶ 3). Even if plaintiffs were credited with the October 3 date when the process server did *not* leave the papers in the hands of anyone at Yale (*see* Ex. 3 to Rabin Decl.; Sawyer Reply Decl. ¶ 3), and not the later October 29 date when Yale's Associate General Counsel took the papers from the process server (Sawyer Reply Decl. ¶ 3), it is hardly evidence that would negate plaintiffs' clear lack of attention to prosecuting this action against Yale in a timely manner. October of 2007 was much too late in the day for plaintiffs to decide to pursue this action. Until October, Yale could not be sure just what plaintiffs' intentions were with respect to Yale.

7. The gap in time from April 2007 (when the complaint was filed) or May 2007 (when the action was removed) until October 2007 is not, as plaintiffs cavalierly call it, a "relatively short delay in service." Rabin Decl. ¶ 7. Yale did nothing to prevent an attempt at service before October 2007. It is not up to plaintiffs to decide when it is convenient for their own purposes to prosecute the case against Yale. The caselaw gives plaintiffs no comfort in this situation. Plaintiffs do not, and cannot, cite any case to support their request that this Court excuse their dilatory conduct. Instead, the caselaw squarely supports Yale's motion to dismiss for untimely service under Rule 4(m), making service defective and subject to dismissal under Rule 12(b)(5). *See* Yale's Memorandum in Support of Motion to Dismiss or Transfer, dated Nov. 19, 2007, at 6-8 (citing caselaw).

**If It Is Not Dismissed, the Action Should Be Transferred to the District of Connecticut**

8. Plaintiffs' opposition papers do not dispute that all events alleged in the Complaint occurred in New Haven, Connecticut. Nor do they dispute that the District of Connecticut is a proper venue in this case pursuant to 28 U.S.C. § 1391(a), or that the District of Connecticut would have been the *only* appropriate venue had this action originally been commenced in Federal court.

9. Plaintiffs argue that jurisdiction is proper over Yale in New York. *See* Rabin Decl. ¶¶ 10-14. But Yale does not seek dismissal for lack of personal jurisdiction. Rather, it seeks transfer "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). There is no need for Yale to engage in argument over personal jurisdiction when the record is so clear that the case should be litigated in Connecticut, if it should be litigated at all.

10.     All that plaintiffs can say in support of the convenience of litigating this case in New York, rather than in Connecticut, is that one witness has moved from New Haven to Providence, Rhode Island and that another witness attending Yale in New Haven (but originally from New York) will be graduating in 2008. *See* Rabin Decl. ¶ 15. It is hard to see how those circumstances make it more appropriate to litigate this action in New York rather than Connecticut. Plaintiffs also speculate that Yale's police personnel will be irrelevant to this case, but that ignores their own Complaint where they claim that Yale failed to provide security or to enforce policies or rules. Complaint ¶ 17. Yale University's own Police security force, its administrators, and its students will be necessary to Yale's defense of this case, and so will the numerous documents maintained in New Haven, as I set forth in ¶¶ 10-15 of my initial Declaration dated November 19, 2007. Only one of the plaintiffs, Constance Gerena, is living in New York, with Alexandra Gerena retaining her New York domicile while still a student at Yale. This case has no other ties to New York. Plaintiffs do not dispute that Connecticut law will govern their claims. While plaintiffs complain of a disparity between their wealth and Yale's, that is not an important factor under 28 U.S.C. § 1404 (*see* Yale's Memorandum in Support of Motion to Dismiss or Transfer at 16) and plaintiffs cannot, in any event, show how prosecuting the action in Connecticut (where Alexandra Gerena has been living as a student) rather than in lower Manhattan will cause them substantial economic harm.

11.     Plaintiffs do not attempt to distinguish, let alone mention, the numerous cases from this District supporting transfer of venue in similar circumstances. *See* Yale's Memorandum in Support of Motion to Dismiss or Transfer at 18-20.

12.     Plaintiffs' opposition papers discuss the co-defendant, Gregory Korb, but that discussion is irrelevant to the disposition of this action against Yale. In any event, I have been informed by defendant Korb's counsel that defendant Korb intends to move to dismiss the action

6

against him for lack of service and possibly other grounds. Since the docket sheet in this case shows no return of service as to Korb, the action against Korb is likely to be dismissed. If the Court dismisses defendant Korb from the case, we respectfully submit that the Court should also grant the prong of Yale's motion seeking dismissal instead of the prong of the motion seeking transfer. If the action against Yale is only transferred and not dismissed, and plaintiffs commence a new action against Korb (whether in New York, New Jersey or elsewhere), there will be inefficient piecemeal litigation of plaintiffs' claims in two separate proceedings and possibly in two different fora.

**Wherefore,** it is respectfully requested that this Court grant in all respects Yale's motion to dismiss the complaint herein or in the alternative to transfer the action to the United States District Court for the District of Connecticut, together with such other and further relief as the Court deems just and proper.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on this 5th day of December, 2007.

R. Scott Greathead

## CERTIFICATE OF SERVICE

I hereby certify that, on December 5, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system. In addition, pursuant to Federal Rule of Civil Procedure 5 and Local Civil Rule 5.3, I certify that, on December 5, 2007, a copy of the foregoing has been mailed, by overnight delivery service, to the following:

David Rabin, Esq.
Rabin Law Office
3889 Crompond Road
Cortlandt Manor, NY  10567

Richard Emery, Esq.
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019


　　　　　　　　　　　　　　　　　　　　　　/s/  R. Scott Greathead
　　　　　　　　　　　　　　　　　　　　　　R. Scott Greathead  (RSG 7824)

\490\197\53644.2 [N.Y.]